UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAY SULIN KEODARA,

        Petitioner,

   v.

JERI BOE,

        Respondent.

Case No. C20-01438-RJB-SKV

REPORT AND RECOMMENDATION

Petitioner, a state prisoner who is currently confined at Clallam Bay Corrections Center in Clallam Bay, Washington, seeks relief under 28 U.S.C. § 2254 from a 2016 King County judgment and sentence. Dkt. 17-1, Ex. 1. Respondent has filed an answer to Petitioner's habeas petition and submitted relevant portions of the state court record. Dkts. 16, 17. Petitioner has filed a response to Respondent's answer and requests an evidentiary hearing. Dkt. 20. Petitioner has also filed a separate motion seeking to expand or supplement the record. Dkt. 22. Respondent opposes the motion. Dkt. 23.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Petition be DENIED, that Petitioner's request for an evidentiary hearing be DENIED, that Petitioner's motion to expand or supplement the record

REPORT AND RECOMMENDATION - 1

(Dkt. 22) be DENIED, and the case be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED.

## I.   FACTUAL AND PROCEDURAL HISTORY

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to Petitioner's conviction as follows:

> On September 12, 2011, a fatal shooting occurred at a bus stop on Rainier Avenue. Four people were inside the bus shelter located at the southwest corner of Rainier Avenue South and South McClellan Street. A vehicle pulled up, and some Asian males, appearing to be in their teens or early 20s, asked the group if they were looking for any "soft." Verbatim Report of Proceedings (VRP) (May 8, 2013) at 135–36. "Soft" was known as a street term for crack cocaine. One of the persons inside the shelter, Victor Lee Parker, approached the vehicle and may have made a purchase. Parker then returned to the bus stop, and the vehicle drove south on Rainier and then turned.
> Later, three of the men from the vehicle approached the bus stop from the north on foot. One of them had a gun and demanded money from the group. The gunman fired on the group after one person tried to run. All four people were hit. Parker had been shot once and was lying on the ground when the shooter walked up to him and shot him in the head. Surveillance cameras from a nearby store showed images of a similar vehicle and of a man in a blue sleeveless jersey with writing on it.
> The State arrested Keodara for an unrelated incident about five weeks after the shooting. On October 20, 2011, Renton police officers apprehended him in a silver, four-door Mitsubishi Galant. The car was impounded, and the police obtained a warrant to search the car on October 21, 2011. In the car, the police found mushrooms in a bag belonging to the driver, other drug packaging paraphernalia, and a backpack containing a cell phone.
> […]
> Keodara was charged several months later for the Rainier Avenue shooting after being identified from the surveillance video images. One of the victims, Sharon McMillon, described the gunman and later testified that the car in the video appeared to be the same one that stopped at the shelter, and that the person in the blue basketball jersey appeared to be the shooter. Keodara was also identified in the video by Lacana Long, who dated Keodara in 2011.
> Nathan Smallbeck told police that Keodara called him after the shooting and told him that he had "just shot at a bus station." VRP (May 13, 2013) at 34–35. He provided a statement to police about a call from Keodara around 3:18 a.m. and that he called Keodara later around 11:00 a.m. *Id.* at 36. The State presented Keodara's telephone records showing call records and texts from the day of the shooting. The State also obtained location data for Keodara's phone that showed it was in the area near the time of the shooting.
> […]
> Keodara was charged with and convicted of first degree murder and three counts of first degree assault, each with a sentencing enhancement, and unlawful possession of a firearm in the first degree.

Dkt. 17-1, Ex. 2, at 15-18.

REPORT AND RECOMMENDATION - 2

1   The King County Superior Court sentenced Petitioner in 2013.  Dkt. 17-1, Ex. 4.
2   Petitioner appealed his judgment and sentence to the Washington Court of Appeals.  *Id.*, Exs. 5,
3   6, 7, 8.  The Washington Court of Appeals affirmed the convictions but remanded for
4   resentencing.  *Id.*, Ex. 2.  Keodara sought review by the Washington Supreme Court.  *Id.*, Exs. 9,
5   10.  The Washington Supreme Court denied review without comment on June 1, 2016.  *Id.*, Ex.
6   11.  The Washington Court of Appeals issued the mandate on June 17, 2016.  *Id.*, Ex. 12.

7   The King County Superior Court resentenced Petitioner in 2016.  *Id.*, Ex. 1.  Petitioner
8   appealed from the amended judgment and sentence to the Washington Court of Appeals.  *Id.*,
9   Exs. 13, 14.  The Washington Court of Appeals affirmed the amended sentence.  *Id.*, Exs. 15, 16,
10  17, 18.  Petitioner sought review by the Washington Supreme Court.  *Id.*, Exs. 19, 20.  The
11  Washington Supreme Court denied review without comment on October 31, 2018.  Dkt. 17-2,
12  Ex. 21.  The Washington Court of Appeals issued the mandate on December 7, 2018.  *Id.*, Ex.
13  22.

14  Petitioner filed a personal restraint petition in October 2019.  *Id.*, Exs. 23, 24.  The
15  Washington Court of Appeals dismissed the personal restraint petition.  Ex. 25.  Petitioner
16  sought review by the Washington Supreme Court.  *Id.*, Ex. 26.  The Washington Supreme Court
17  denied review on August 7, 2020.  *Id.*, Ex. 27.  The Washington Court of Appeals issued a
18  certificate of finality on October 30, 2020.  *Id.*, Ex. 28.

19  Petitioner filed the instant federal habeas petition on September 27, 2020.  Dkts. 1, 7.

20  II.   GROUNDS FOR RELIEF

21  Petitioner identifies the following single ground (Ground One) for habeas relief: "Did the
22  state[']s use of false material testimony violate Mr. Keodara[']s right to due process under the
23  14th Amend of the U.S. Const.?"  Dkt. 7, at 5.

REPORT AND RECOMMENDATION - 3

III.    DISCUSSION

A.    Exhaustion

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

Respondent concedes Petitioner has properly exhausted his single habeas claim by fairly presenting it to the Washington Supreme Court as a federal claim. Dkt. 16, at 4. Accordingly, the Court will proceed to consider Petitioner's claim on the merits.

B.    Merits review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013). "When more than one state court has adjudicated a claim, [the Court analyzes] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id*. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

(quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

With these standards in mind, the Court turns to Petitioner's sole ground for habeas relief (Ground One): "Did the state[']s use of false material testimony violate Mr. Keodara[']s right to due process under the 14th Amend of the U.S. Const.?" Dkt. 7, at 5.

Petitioner raised this claim in his pro se brief on direct appeal. Dkt. 17-1, Ex. 8, at 167, 172-176. Specifically, Petitioner argued, as he does in the instant habeas petition, that Mr. Smallbeck had falsely testified that he and Petitioner had two phone calls together during which Petitioner confessed his role in the shooting. *Id.*; Dkt. 7. Petitioner argued the telephone records, which were produced and admitted by the State at trial, did not reflect calls between Petitioner and Mr. Smallbeck during the date and time Mr. Smallbeck stated the calls had occurred. *Id.*; Dkt. 7. Petitioner argued the telephone records demonstrated that Mr. Smallbeck committed perjury. *Id.*, at 172-176; Dkt. 7.

The Washington Court of Appeals rejected Petitioner's claim on direct appeal stating:

> Finally, Keodara argues that the prosecutor committed misconduct by proffering Smallbeck's testimony about the time and occurrence of calls and texts back and forth with Keodara. […] He claims that the records (the same records he claims were admitted in error because they had not been authenticated) clearly establish that no such calls occurred. The jury is entitled to weigh the evidence and determine the credibility of witnesses; we do not review such determinations on appeal. *State v. Camarillo,* 115 Wash.2d 60, 71, 794 P.2d 850 (1990). Because the testimony was properly before the jury, we do not find that the prosecutor committed misconduct[…]

REPORT AND RECOMMENDATION - 6

Dkt. 17-1, Ex. 2, at 32.  The Washington Supreme Court denied Petitioner's petition for review of this claim without comment.  *Id.*, Ex. 11.

Petitioner raised his false testimony claim again in his personal restraint petition (PRP).  Dkt. 17-2, Ex. 23, at 13-16.  The Washington Court of Appeals dismissed Petitioner's PRP finding Petitioner had raised this claim of error on direct appeal and it was rejected, and Petitioner failed to identify any circumstances justifying reconsideration of the issue and made no showing the interests of justice required allowing him to relitigate the claim.  *Id.*, Ex. 25, at 317.  In its ruling denying review of Petitioner's PRP, the Washington Supreme Court stated:

> Mr. Keodara argues here as he did on direct appeal, that the State knowingly presented false testimony by Nathan Smallbeck, who said he had received telephone calls from Mr. Keodara admitting to the shooting, although telephone records purportedly showed otherwise. Mr. Keodara urges that the Court of Appeals on appeal did not address the merits of his prosecutorial misconduct claim because it merely cited the principle that the jury was entitled to weigh the evidence and determine the credibility of witnesses. But the court cited the correct principle because the telephone records did not prove that Mr. Smallbeck's testimony was knowingly false or that the State knew it was false. Mr. Smallbeck testified that he received a call from Mr. Keodara at a certain time after the shooting, but phone records showed he actually received a text message at that time.  And although Mr. Smallbeck said he received a call from Mr. Keodara later in the morning of the shooting, records showed he received a call the morning of the next day. Thus, Mr. Smallbeck's memory may have simply been faulty.  The records did not conclusively establish that he lied on the stand, and therefore the Court of Appeals properly treated the matter as one of credibility for the jury to decide not as a matter of knowing presentation of false testimony.

Dkt. 17-2, Ex. 27, at 330-331.

"[A] conviction obtained by knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *U.S. v. Agurs*, 427 U.S 97, 103 (1975) (footnotes omitted); *Giglio v. U.S.*, 405 U.S. 150, 153 (1972).  "[T]he knowing use of false testimony to obtain a conviction violates due process regardless of whether the prosecutor solicited the false testimony

REPORT AND RECOMMENDATION - 7

or merely allowed it to go uncorrected when it appeared." *U.S. v. Bagley*, 473 U.S. 667, 679 n.8 (1985); *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).

"A habeas petitioner seeking relief based on the presentation of false testimony by a prosecution witness must show not only that the witness testified falsely but also that the prosecution knew or should have known that the witness testified falsely and that the false testimony was material, *i.e.*, there is a reasonable likelihood that the false testimony affected the jury's decision." *Torres v. Ducart*, 2017 WL 2804030 (C.D. Cal. Jan 18, 2017) (*citing Gentry v. Sinclair*, 705 F.3d 884, 903 (9th Cir. 2013)); *Hayes v. Ayers*, 632 F.3d 500, 520 (9th Cir. 2011); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (*en banc*); *see also Bagley*, 105 S. Ct. at 3382 n.9. However, mere inconsistencies in the evidence do not constitute the knowing use of perjured testimony by the prosecutor. *U.S. v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).[1] "The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." *U.S. v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997). "Discrepancies in [. . .] testimony [. . .] could as easily flow from errors in recollection as from lies." *Zuno-Arce*, 44 F.3d at 1423. A "[p]etitioner must point to something in the prosecutor's questioning, or the answers given, that may be construed as reflecting an intention by the prosecutor to mislead the jury." *Gomez v. Adams*, 555 F.Supp.2d 1070, 1091 (C.D. Cal. 2008) (*citing U.S. v. Etsitty*, 130 F.3d 420, 424 (9th Cir. 1997)).

At trial, Mr. Smallbeck testified that Petitioner had called him "[a]round September 12th through September. Mid September" of "2011." Dkt. 17-3, Ex. 36, at 133. He testified that he

---

[1] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 8

had two phone conversations with Petitioner in which they discussed the shooting. *Id.*, at 139. He testified that Petitioner called him on September 12, 2011, shortly after 3:00 a.m. and that he remembered looking at his phone and the time showing 3:18 a.m. *Id.*, at 134-135. He testified that Petitioner told him that he had "just shot at a bus station" and that their conversation lasted three to five minutes. *Id.* When the prosecutor inquired whether he was sure that his memory of 3:18 a.m. was from the actual phone call Mr. Smallbeck stated he was "fairly certain." *Id.* Mr. Smallbeck testified that he spoke to Petitioner again about the shooting on a phone call later the same day, September 12, 2011, around 11 a.m. and that the second phone call had lasted "roughly the same amount of time" as the first phone call. *Id.*, at 136. He also testified that he and Petitioner had not exchanged text messages about the shooting. *Id.*, at 139. During cross-examination, Mr. Smallback testified that he had glanced over his telephone records and wasn't able to find the specific calls he had testified about, indicating that he found the records quite confusing. *Id.*, at 165.

The prosecution subsequently submitted the telephone records of Petitioner and Mr. Smallbeck's text messages and phone calls from September 2011, as well as testimony regarding those records from representatives of the service providers for the phones and a detective. Dkt. 17-3, Ex. 37, at 280-284, 369-372, 433-435. The testimony indicated that the records showed a text message from Petitioner's phone to Mr. Smallbeck's phone at 3:17 a.m. on September 12, 2011, and that a phone call took place between Petitioner's phone and Mr. Smallbeck's phone at 11:08 a.m. on the following day, September 13, 2011, that lasted 188 seconds. *Id.*, Ex. 37, at 302-303, 307-308, 433-435. The testimony further reflected that the records showed a second phone call later in the evening on September 13, 2011, between Mr. Smallbeck and Petitioner lasting 98 seconds. *Id.*, Ex. 37, at 435.

REPORT AND RECOMMENDATION - 9

During closing argument, the prosecutor addressed the inconsistency between Mr. Smallbeck's testimony regarding the timing of the two phone calls between himself and Petitioner and the telephone records. The prosecutor acknowledged that the phone records did not show a phone call in the early morning on September 12, 2011, as Mr. Smallbeck had testified, but noted that "there is a text. And it is certainly conceivable that time 3:18 is staying in Mr. Smallbeck's head because a text came in to him that day." *Id.*, Ex. 39, at 558. The prosecutor also noted that the phone records also showed a phone call at about 11:00 a.m. on September 13, 2011, that lasted about three minutes, around the same duration that Mr. Smallbeck had estimated his call with Petitioner to be. *Id.*, Ex. 39, at 558-559. The prosecutor further noted that there was also a second call later that day, in the evening of September 13, 2011, that lasted 98 seconds. *Id.*, Ex. 39, at 558-559. The prosecutor again acknowledged the discrepancy between the phone records and Mr. Smallbeck's testimony noting "[s]o he was off on the exact dates, but what is also true is that the phone records do support calls just as he said between them." *Id.*, Ex. 39, at 558-559. The prosecutor then reminded the jury that their job was to consider Mr. Smallbeck's credibility, "and you have to judge how he seemed to you, to whether you believe his testimony." *Id.*, Ex. 39, at 558-559.

Petitioner fails to show the state appellate courts' rejection of his false testimony claim was objectively unreasonable. There is no dispute that there were some discrepancies between Mr. Smallbeck's testimony and the telephone records regarding his recollection of the dates and whether a communication he testified he remembered as a call was in fact a text. However, Petitioner points to nothing in the record to demonstrate that these discrepancies were a product of a lie rather than a simple error in Mr. Smallbeck's recollection. These discrepancies are insufficient to demonstrate Mr. Smallbeck's testimony was materially false rather than the

product of an error in recollection. *See Aguilar v. Ryan*, No. CV-08-1650-PHX-FJM, 2009 WL 2970621, at *7 (D. Ariz. Sept. 11, 2009) ("[A] claim of prosecutorial misconduct is not made out where discrepancies in the testimony about various details 'could as easily flow from errors in recollection as from lies,' and there 'is no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies.'" (quoting *U.S. v. Zuno–Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995)); *Carachure v. Robertson*, 2019 WL 1179171, at *14 (C.D. Cal. Jan. 29, 2019), *report and recommendation adopted*, 2019 WL 1171269 (C.D. Cal. Mar. 12, 2019), *certificate of appealability denied sub nom. Carachure v. Robertson*, 2020 WL 1519818 (9th Cir. Mar. 20, 2020) (State court's rejection of false testimony claim was not objectively unreasonable, witness's inaccuracy in describing the precise nature of individual's tattoos was easily attributable to an error in her perception or recollection, raised only a slight discrepancy with other evidence of Petitioner's tattoos, and an error or discrepancy of this slight nature was insufficient to demonstrate that witness testified falsely.); *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004) ("Discrepancy is not enough to prove perjury.").

Furthermore, Petitioner points to nothing in the record demonstrating that the prosecutor knowingly elicited false testimony from Mr. Smallbeck or that could reasonably be construed as reflecting an intention by the prosecutor to mislead the jury through Mr. Smallbeck's testimony. Rather, the record shows the prosecutor admitted the telephone records of the calls and texts between Mr. Smallbeck and Petitioner into evidence and produced witnesses who testified to the contents of those records. This evidence clearly revealed the discrepancies between Mr. Smallbeck's testimony regarding his memory of the telephonic communications with Petitioner and the timing and nature of those communications reflected in the telephone records. The prosecutor further acknowledged the inconsistencies between Mr. Smallbeck's testimony and the

REPORT AND RECOMMENDATION - 11

telephone records in her closing argument and, while she implied a possible explanation for those inconsistencies, i.e., errors in recollection, she also reminded the jury it was their job to assess Mr. Smallbeck's credibility.[2]

Petitioner also appears to argue that the prosecutor "misrepresented" Mr. Smallbeck's testimony during closing argument by asserting that "the phone records do support calls just as he (Smallbeck) said between them and that there is even a text at 3:18[.]" Dkt. 7-1, at 11. However, as noted above, the record reflects that during her closing argument the prosecutor directly acknowledged and discussed the discrepancies between Mr. Smallbeck's testimony and the telephone records with respect to the timing and nature of some of the telephonic communications.[3] The prosecutor reasonably argued that the telephone records supported the fact that there were phone calls that took place between Mr. Smallbeck and Petitioner, and that in testifying Mr. Smallbeck merely got the precise dates and perhaps the nature (text or call) of one of the communications wrong. *See, e.g., Shaw v. Terhune*, 380 F.3 473 (9th Cir. 2004) (Rejecting habeas petitioner's challenge to prosecutor's statements during closing argument on grounds that "[i]t is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true." (*quoting U.S. v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002)).

---

[2] The Court notes that even if Mr. Smallbeck's testimony regarding the specific timing and nature of the telephonic communications with Petitioner could be considered "false" because of the discrepancy with the telephone records, the record does not show that the prosecutor allowed that testimony to go "uncorrected" as the State submitted the telephone record evidence and acknowledged the discrepancy during closing arguments.

[3] The Court notes that while some of the prosecutor's statements made in closing argument on this issue lack some clarity, the record does not support the conclusion that the prosecutor knowingly used false testimony to obtain a conviction.

REPORT AND RECOMMENDATION - 12

1    In sum, the record supports the state court's rejection of Petitioner's claim. Petitioner fails to demonstrate the state court's rejection of his false testimony claim was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial. Therefore, Petitioner is not entitled to habeas relief.[4]

C.   Evidentiary hearing

Petitioner asks the Court to hold an evidentiary hearing regarding his false evidence claim. The court retains the discretion to conduct an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.*, at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *Pinholster*, 563 U.S. at 185 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome

---

[4] The Court notes that, in his response to Respondent's answer, Petitioner also raises some additional challenges to some of the statements made by the prosecutor during closing argument including that some statements constituted "improper vouching" or improper opining on Defendant's guilt. Dkt. 20, at 15. However, to the extent Petitioner intends to raise additional claims of prosecutorial misconduct in closing argument, including improper vouching or opining on Defendant's guilt, such claims were not properly presented as separate claims in his Petition. Accordingly, the Court declines to address such claims here. *See* Rule 2(c) of the Rules Governing Section 2254 (requiring Petitioner to specify in his habeas petition all grounds for relief, as well as the facts supporting each of those grounds); *see Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (holding a traverse "is not the proper pleading to raise additional grounds for relief" and that issues raised for the first time in the Petitioner's traverse were not properly before the district court; *accord Greenway v. Ryan*, No. CV-98-25-TUC-RCC, 2013 WL 6196293, at *2 (D. Ariz. Nov. 27, 2013), *aff'd*, 856 F.3d 676 (9th Cir. 2017).

REPORT AND RECOMMENDATION - 13

the limitations of § 2254(d)(1) on the record that was before the state court.")[5]; s*ee also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied [. . .] an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted). The Court concludes Petitioner's habeas claims may be resolved by review of the existing record and no evidentiary hearing is required because Petitioner's allegations do not entitle him to habeas relief.

Petitioner also seeks to expand or supplement the record with new evidence in the form of a 2014 letter from his attorney. Dkt. 22. However, supplementation of the record is also barred under *Pinholster*. *Pinholster*, 563 U.S. 170; *see Runningeagle v. Ryan*, 686 F.3d 758, 773–774 (9th Cir. 2012) (*Pinholster* governs requests for discovery, expansion of the record and evidentiary hearings); *Neng Saypao Pha v. Swarthout*, No. 2:13-CV-1133 MCE GGH, 2015 WL 1787569, at *6 (E.D. Cal. Apr. 20, 2015), *report and recommendation adopted*, No. 213CV1133MCEGGHP, 2015 WL 13134476 (E.D. Cal. May 19, 2015), *aff'd sub nom. Pha v. Swarthout*, 658 F. App'x 849 (9th Cir. 2016) ("*Pinholster* applies to all requests for evidentiary hearing (and discovery) no matter the subject of the claim; it worked a sea change in federal habeas corpus practice."); *Virgo v. Frauenheim*, 2018 WL 3831003 at * 12 (E.D. Cal., August 13, 2018) (The article petitioner attached to federal habeas pleading is precluded by *Pinholster's*

---

[5] The *Pinholster* limitation also applies to claims brought under § 2254(d)(2). *See Gulbrandson v. Ryan*, 738 F.3d 976, 993, n. 6 (9th Cir. 2013) ("*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well. *See* § 2254(d)(2) (allowing for habeas relief if the state court decision "was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*.") (emphasis added); *Pinholster*, 131 S.Ct. at 1400 n. 7 (comparing (d)(1) to (d)(2) and stating that (d)(1) "also is plainly limited to the state-court record.") (emphasis added)").

REPORT AND RECOMMENDATION - 14

bar to supplementing facts adduced for the first time in federal proceedings where claim is adjudicated on the merits in state court.). Accordingly, the Court may not consider the supplemental evidence not previously considered by the state courts.

Based on the foregoing, Petitioner's request for an evidentiary hearing and his request to expand or supplement the record (Dkt. 22) should be DENIED.

### IV.　CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that a certificate of appealability should be DENIED.

### V.　CONCLUSION

The Court recommends that petitioner's habeas petition be DENIED without an evidentiary hearing, that his request to expand or supplement the record (Dkt. 22) be DENIED, and that this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 17, 2021**.

Dated this 24th day of August, 2021.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge